EXHIBIT 6

| | |
|---|---|
| PITKIN COUNTY DISTRICT COURT<br>506 East Main Street<br>Aspen, Colorado 81611<br>970.925.7635 | |
| THE PEOPLE OF THE STATE OF COLORADO,<br>Plaintiff,<br><br>v.<br><br>Nikos Jonah HECHT,<br>Defendant. | Δ COURT USE ONLY Δ |
| David A. Bovino # 40730<br>Lauren E. Roberts # 43800<br>BOVINO & ASSOCIATES<br>600 East Hopkins Ave., Suite 301<br>Aspen, Colorado 81611<br>Tel – (970) 925-4445<br>Fax – (970) 925-5333<br>david@bovinolaw.com<br>lauren@bovinolaw.com | Case No: 2015 M 197<br><br>Division:  1          Courtroom: |

AFFIDAVIT OF BROOKE LAUREN WARFEL IN SUPPORT OF MOTION
TO APPOINT SPECIAL PROSECUTOR OR IN THE ALTERNATIVE TO
FULLY INVESTIGATE AND PROSECUTE PURSUANT
TO C.R.S. § 16-5-209 AND THE VICTIM'S RIGHTS ACT

Brooke Lauren Warfel, the Affiant, of legal age, being first duly sworn, deposes and states as follows:

1.     I am over the age of 18 and have first-hand, personal knowledge of the information contain in this affidavit.  If called as a witness, I could testify competently thereto.

2.     I was verbally attacked, threatened and terrorized by Nikos Hecht ("Hecht") including where he physically grabbed me, pushed me so hard that I fell and hit my head on the concrete floor, and put both his hands around my neck and choked me.  It is when I tried to leave Hecht's residence due to his aggressive behavior that he stopped me from leaving, grabbed the strap of my handbag,  pulled me backwards and then pushed me down such that I struck my head on the concrete floor.  I was prevented from leaving his residence, and from collecting my personal belongings and leaving, although I tried on multiple occasions.  At different points during the altercation, which first began at approximately 6 p.m. on July 15, 2015, and continued on and off until the following day at approximately 1 p.m., which I was able to safely leave the house after he exited the premises.  His housekeeper then helped me collect my personal belongings and I left the residence.  I have communicated the above to the Sheriff's Office of Pitkin County (the "Sheriff").

3.     Some of the above was recorded on an audio recording taken during a portion of the altercation.  I made the audio recording because I was concerned that Hecht would kill me or otherwise severely hurt me and I wanted someone to know what had transpired.  A copy of that audio was provided to the Sheriff and others in law enforcement, as was a written transcript of the audio tape.  In the audio, among other things, I am heard gasping and telling Hecht that he's choking me.  Hecht is heard threatening me and my family members, threatening that he will "fucking split [me] pussy to mouth before [I will] fucking survive without [him]."  The audio also reflects my pleas for Hecht not to hurt me.  In addition to being prevented from leaving his residence and hitting my head on the concrete floor when he pushed me down, he forcefully grabbed me leaving bruises on my arms.

4.     That night, I called 911 from Hecht's home phone, but because I was scared, I immediately hung up.  When dispatch from 911 contacted the house, Hecht told the person on the other end of the phone that it related to a false alarm.  That statement was false and, from my perspective, was designed to ensure that law enforcement did not come to his home.

5.     An audio tape of a separate incident was also provided to the Sheriff that contains similar content.  I also provided a written transcription of that audio, which recorded a portion of a separate earlier heated argument where Hecht threatened me and my family.  I made that recording because, as was the case on

July 26, 2015, I was concerned because of Hecht's aggressive behavior that he might make good on his threats.

6.      It would be impossible to detail the extent and nature of the verbal abuse and the torrent of threats made by Hecht, but certainly some this abuse was contemporaneously recorded and provided to the Sheriff in the form of these audio files.

7.      I also communicated to the Sheriff's office that I was and remain very concerned about Hecht and the  retaliatory actions he will take against me or my family members.  Indeed, after the incident on July 26, 2015 was brought to the attention of the Sheriff and I had confided about what had transpired at the Hecht residence, I became very concerned about cooperating with law enforcement because of what Hecht might do.  After the incident on July 26, 2015, Hecht himself threatened that if I cooperated with law enforcement, it would be disastrous for him.  Scared, I allowed him to dictate the entirety of my witness statement that I signed and submitted, which recanted what I originally told law enforcement.  The witness statement dictated by Hecht did not represent what actually transpired.  I advised the Sheriff's office that it was Hecht that crafted the statements in the witness statement, that those statements were untrue and that what I originally told the Sheriff's office was exactly what transpired on July 26, 2015.

8.      It is my understanding that all of the above information, and more, has been communicated to the District Attorney's office by providing the evidence and also by direct communications between my counsel and the District Attorney's office.

9.      Hecht was arrested and a Mandatory Protection Order ("MPO") was entered on July 31st for my protection.  The original MPO did not have checked the box prohibiting Hecht's use of alcohol or drugs.  Because this was a significant concern, I submitted an affidavit asking the Court to modify the MPO to include the omitted provision and have Hecht submit to blood drug tests.  The MPO was so modified and weekly supervised blood testing was ordered, but I do not know whether the drug testing has ever happened.

10.      Another condition of the MPO is that Hecht not contact me in any way.  On October 10, 2015, Hecht contacted my cell phone by initiating three separate face time calls to me.  I provided copies of the screen shots evidencing these calls to the Sheriff.  I was told that the Sheriff was ready to arrest Hecht for

violation of the MPO, but that the District Attorney's office said that it would prefer testing be performed on Hecht's cell phone.  To date, Hecht has not been arrested.

11.     Hecht has used other means to intimidate me including have me followed by a private investigator.  I advised the Sheriff that he was having me followed and videotaped, which was very disconcerting.  Particularly when, out of the blue, despite having rented my apartment for two years, in October I was told that my lease was not being renewed and was forced to move out of my apartment.  I was coincidentally advised of this on the same day that I filed my Affidavit asking to have the MPO modified.

12.     I do not believe my rights are being protected or that my safety and welfare are being considered.  I learned on November 22, 2015 from reading a local Aspen newspaper that Hecht sought and was granted permission to travel to Mexico, New York City and Palm Beach, and this without the objection of the District Attorney's office.  I was not even told of Hecht's request to travel, but, given that I have left the Aspen community due to fear of Hecht's reprisals, I am double concerned now that he may travel.  I am unaware of what arrangements, if any, have been made regarding the mandatory drug testing, which too is a condition of his bond.

13.     I also learned that the District Attorney's office offered a plea deal to Hecht, without first advising me of the terms of that deal.  And, while it is my understanding that the plea was withdrawn when I complained, the fact that the District Attorney's office was willing to allow him to plead to low level misdemeanors given the facts causes me great pause that the serious allegations are being taken seriously enough or even fully investigated.

14.     Hecht is well-known in the community, as is his father, Andrew Hecht with Garfield & Hecht, a prominent law firm in Aspen.  They are long-time Aspen residents and very well-connected and wealthy.  Given their connections in this small town and their resources, I am concerned that my rights as a victim are not being protected.  I am terrified of Hecht and know first-hand how abusive, relentless, vicious, violent and vengeful he can be.  I have communicated to law enforcement that I have countless texts confirming Hecht's behavior, and have provided them.

15.     When Michael Warren was the Deputy District Attorney assigned to the case, I felt that he took the allegations seriously and was reviewing the evidence to make appropriate determinations regarding how to charge and prosecute the

claims. I met and spoke with Mr. Warren somewhere between 25 and 35 hours over the last 3 months, prior to his resignation from the District Attorney's office.

16.     Although the new prosecutor assigned to the case and my attorney and I have scheduled a conference call for November 24th, given what transpired with the plea deal being offered without my knowledge, the low level charges that were offered and the fact that I was not told about Hecht's request to travel (or the fact that the DA's office did not even object to it), I am concerned that my rights as a victim are not being protected.

17.     After Mr. Warren's departure, my case was assigned to Emily Nation. It is my understanding that she has been with the DA's office for about 2 months and that she has not tried a case before and previously practiced in the area of civil (not criminal) law. While I do not have personal of these facts, that is my understanding. Assuming these facts are true, this causes me significant pause since Hecht is represented by Pamela Mackey, an experienced and formidable criminal lawyer.

18.     I met with Ms. Nation and Anne Norrdin on November 6, 2015. They greeted me as I was walking into the office by handing me a trial subpoena. Neither of them had reviewed the file or spoken to Mr. Warren at that time (at least that was what was represented by them to me) and, as a result, were not in a position to discuss the case. I asked Ms. Norrdin to take charge of the case, but she refused. I asked to have the case assigned to an experienced Deputy DA, but was told that Ms. Nation would be the handling it.

19.     I am concerned that the office is not fully investigating the allegations or making determinations regarding what is the highest (rather than lowest) charges that can be brought given the evidence. To my knowledge, based on what was represented to me on November 6, 2015, at least at that time no further investigation was ongoing.

20.     In addition to the above, the below are additional examples:

- The MPO prohibits Hecht from contacting me. As noted above, Hecht tried to facetime me 3 times on October 10th. I told Deputy Sheriff Monique Merritt about this and gave her the messages on my cellphone of Hecht's contacts on the 10th. Hecht's phone was confiscated by the Sheriff and the facetime messages were on it. Hecht was not arrested and it is my

understanding that he was not because the DA's office stepped in and would not allow the arrest to be made, asking for additional information from Hecht's cellphone carrier. This was nearing two months ago.

- When I met with Ms. Nation and Ms. Norrdin on November 6, 2015, they asked me to think about the kind of plea deal that I would agree to and spent a lot of time talking about plea bargains, rather than taking the case to trial or what evidence would best support the charges. They did not discuss the specific terms of any plea deal that might be offered and I found out after-the-fact that one had been made.

21.    As the victim of what I believe are serious crimes, my rights have already been violated. I was terribly concerned to tell my story in the first instance because of my fears about retribution from Hecht, but also because I know how powerful Hecht and his family are in this community. But as the victim, I too have rights including the fact that my allegations will be thoroughly investigated and that Hecht will be charged with more than wrist-slap misdemeanors and a quickie plea deal. I am now in constant fear for my life, worried about my physical safety at all times.

22.    While I am not suggesting any conspiratorial conduct on the part of the District Attorney's office or any intentional conduct on their part, the facts are the facts and I simply do not have confidence that the office will be able to objectively investigate and prosecute charges against Hecht for the reasons outlined above. I am respectfully asking that a Special Prosecutor be appointed to do so.

23.    I ask that a minimum, this Court require the District Attorney's office to fully investigate the criminal conduct of Hecht and charge him appropriately under the circumstances.

Further Affiant Sayeth Naught.

Brooke Lauren Warfel

State of New York )
)
County of New York )

Sworn to and subscribed this 23rd day of November, 2015, by Brooke Lauren
Warfel, who is ___ personally known to me, or and provided me with photo
identification.

JAMES A. ROSSETTI
Notary Public, State of New York
No. 01-4982998
Qualified in New York County
Commission Expires 7/23/17

7